UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────

NICOLE BOYCE,

                    Plaintiff,

        -vs-                        **No. 1:13-CV-00988 (MAT)**
                                    **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,
                    Defendant.

───────────────────────────

## I.   Introduction

        Represented by counsel, Nicole Boyce ("plaintiff") brings this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her application for supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II.  Procedural History

        The record reveals that on June 8, 2010, plaintiff protectively filed an application for SSI, alleging disability beginning January 5, 2005.[1] After this application was denied,

────────────────

        [1] The Court notes that SSI cannot be paid for any period prior to the month after that in which the application is filed. See 42 U.S.C. § 1382(c)(7); 20 C.F.R. § 416.501.

plaintiff requested a hearing, which was held before administrative law judge William M. Weir ("the ALJ") on November 29, 2011. The ALJ issued an unfavorable decision on June 29, 2012. The Appeals Council denied review of that decision. This timely action followed.

## III. Summary of the Evidence

### A. Plaintiff's Reports

Plaintiff, who was 23 years old at the time of the hearing, testified that she quit school at 16, having been in special education, because she was "getting harassed." T. 37-38. T. 40. Plaintiff testified that she slept 16 hours a day at least 20 days per month, and that her family took care of her children while she slept. She agreed that if her family helped less, she would have to "change [her] ways" and "[n]ot sleep as much." T. 57. She also testified that she experienced "racing thoughts" and "sometimes [could] be up all night" as a result. T. 42. She testified that she "just can't get [her]self up and going," and that she "[felt] depressed all the time." T. 44. She testified that she could color, play video games, and read books with her son. She reported that she was able to do occasional household chores such as putting dishes in the dishwasher or cooking a meal once a week.

Plaintiff testified that she had about twice monthly "anxiety attacks" in public settings. She testified that she quit her job at Tim Horton's because she felt "overwhelmed" with tasks such as

memorizing and counting, and because she "had a hard time with the people." T. 49. Plaintiff reported taking Geodon, Tompamax, and Zoloft for bipolar disorder, and Zocor for a cholesterol problem. She did not have side effects from these medications, and testified that they helped "[m]ost of the time." T. 40.

In association with her SSI application, plaintiff reported that she was unable to work because of bipolar disorder, learning disability, and anemia. She stated that she quit her former job in restaurant service in May 2005 because she "was getting harassed by some of [her] co-workers, and [her] employer wouldn't do anything about it." T. 129. Plaintiff reported that she was five feet, seven inches tall, and weighed 305 pounds.

## B.   Treating Sources

Plaintiff's medical records consist primarily of those relating to mental health treatment for continuing diagnoses of bipolar disorder and anxiety disorder. Regarding her physical health, treatment notes from plaintiff's primary care physician, Dr. Alan Barcomb, indicate normal physical examinations from February 2010 through October 2011. August 2011 treatment records from cardiologist Dr. Jagdish Mishra note normal cardiac activity. Dr. Mishra discussed "[a]gressive lifestyle modifications" with plaintiff, including cessation of smoking. In September 2011, plaintiff was treated at United Memorial Medical Center for a urinary tract infection and gallbladder dysfunction.

In February and March 2010, Dr. Barcomb's treatment records included notes of mental status examinations, and that plaintiff exhibited depressed affect, coherent and logical thought processes, alertness and orientation, realistic judgment, and appropriate insight. In January 2011, plaintiff denied anxiety and depression, however. In June 2011, plaintiff reported depression and stated that she had been treating for that condition.

Plaintiff met with Nurse Practitioner ("NP") Annmarie Kenny, for mental health counseling, from approximately May through December 2010. A mental status exam in June 2010 reported that plaintiff demonstrated normal and intact thought processes; reality-based and organized thought content; fair to good attention and concentration; orientation to time, place, and person; fair insight, judgment, and memory; and fair to bad motivation and initiative. NP Kenny noted that plaintiff suffered from bipolar disorder and a learning disorder, and that she had been "stable on her current medications for sometime." T. 259. At that time, plaintiff was two months pregnant. NP Kenny also opined that plaintiff was "unable to work per her mental health disorder." Id.

NP Kenny completed a report, at the request of the State agency, on July 27, 2010. At that time, NP Kenny had seen plaintiff on three occasions, the last being the June 24, 2010 examination. NP Kenny reported diagnoses of bipolar and anxiety disorder, and opined that plaintiff suffered from symptoms of depression,

4

"excessive sleep," poor concentration, and lack of focus. T. 255. NP Kenny stated that plaintiff was "chronically ill and incapable of pursuing any gainful employment" at that time. T. 257. Upon evaluating plaintiff in October 2010, NP Kenny noted that her prognosis was "fair to poor if she [was] not adherent to [NP Kenny's] medication and treatment regime." T. 329. NP Kenny completed a medical source statement in December 2010, and reported that plaintiff had fair-to-poor ability to understand and remember very short and simple instructions and maintain attention for extended periods of two-hour segments, but good or fair ability in all remaining areas of mental functioning.

Treatment notes from licensed master social workers ("LMSW") Laurie Ripton and Danielle Figura at Genesee County Mental Health ("GCMH") indicate that throughout treatment in 2010 and 2011, plaintiff reported inadequate coping skills, and recounted having arguments with her mother-in-law. Mental status examinations conducted from April 2010 through September 2011 found that plaintiff was alert and oriented, with logical and coherent speech, good eye contact, normal memory, normal psychomotor activity, no conceptual disorganization, fair judgment and insight, linear and goal-directed thought processes, cooperative and interested attitude, bland affect, fair impulse control, possibly below average intellect, and good attention/concentration. Plaintiff

denied suicidal ideation. Plaintiff was a no-show for five appointments with GCMH from July through October 2011.

### C. Consulting Sources

In a September 2010 consulting psychiatric exam, Dr. Renee Baskin noted that plaintiff reported sleeping "all the time," weight loss despite pregnancy, mood swings, short term memory deficits, and concentration difficulties. Plaintiff also reported that she was able to dress, bathe, and groom herself, but "often lack[ed] the energy or motivation to even get out of bed." T. 272. On mental status examination, plaintiff exhibited fluent and clear speech; coherent and goal-directed thought processes with no evidence of hallucinations or delusions; anxious and tense affect; dysthymic mood; clear sensorium; orientation to time, place, and person; "relatively intact" recent and remote memory skills; "borderline" cognitive functioning with a somewhat limited general fund of information; limited insight; and fair judgment. Dr. Baskin opined that, with regard to work limitations, plaintiff would have minimal to no limitations in handling simple instructions and performing simple tasks independently, but moderate limitations in maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks, making appropriate job-related decisions, relating adequately with others, and appropriately dealing with stress. Dr. Baskin also noted that

plaintiff "appear[ed] to be compromised by ineffective coping skills despite what she reports as years in counseling." T. 273.

In a September 2010 psychiatric review technique form, Dr. J. Alpert diagnosed plaintiff with affective disorder, not otherwise specified ("NOS"), anxiety disorder, NOS, and personality disorder, NOS. Under the "B" criteria of the listings, Dr. Alpert found that plaintiff had no restriction in activities of daily living ("ADLs") and no repeated episodes of deterioration, but moderate difficulties in maintaining social functioning and maintaining concentration, persistence, or pace. Dr. Alpert noted no evidence of "C" criteria.

Dr. Alpert also completed a mental residual functional capacity ("RFC") assessment, in which he found that plaintiff was moderately limited in understanding and remembering detailed instructions; carrying out detailed instructions; completing a normal workday or week without interruptions from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. Dr. Alpert found no significant limitation in any of the other listed areas. Plaintiff reported that she quit her job in food service because of "personal reasons," and stated that despite symptoms of anxiety and depression, she last saw her counselor on

June 15, 2010. Dr. Alpert concluded that although plaintiff's file indicated "significant psychiatric limits," she retained the mental RFC to "carry out work procedures with a consistent pace, interact adequately with coworkers and supervisors, adapt to changes and handle stress in the workplace." T. 293.

## IV. The ALJ's Decision

The ALJ followed the well-established five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims. See 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 8, 2010, the application date. At step two, the ALJ found that plaintiff had the following severe impairments: obesity, mood disorder, and learning disorder. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at a sustained basis at all exertional levels "provided it is simple, repetitive work, with no more than occasional contact with the general public, co-workers, and supervisors." T. 22. In assessing plaintiff's RFC, the ALJ noted that although he did not find the "B" criteria of the listings to be satisfied with regard to plaintiff's mental impairments, he did consider plaintiff's nonexertional limitations (which consisted of

moderate difficulties in social functioning and in concentration, persistence, or pace) in his overall RFC assessment.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work as a food server. At step five, the ALJ determined that, considering plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that plaintiff could perform. Accordingly, the ALJ found that plaintiff was not disabled.

## V.   Discussion

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhard, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

Plaintiff contends that the ALJ's RFC assessment was erroneous and that the ALJ should have called a vocational expert ("VE") rather than rely on the Medical-Vocational Guidelines ("the grids").

### A.   RFC Assessment

Plaintiff contends that the ALJ's RFC assessment does not take into account her nonexertional limitations, specifically moderate

limitations in the ability to maintain a regular schedule and maintain attention and concentration. As noted above, based on Dr. Baskin's consulting examination, the ALJ found that plaintiff was moderately limited in social functioning and in concentration, persistence, or pace. The ALJ then explained that he considered this limitation when assessing plaintiff's overall RFC.

The Court notes that additional medical evidence, other than Dr. Baskin's evaluation upon which the ALJ explicitly relied, indicated lesser degrees of limitations than Dr. Baskin found. Although Dr. Alpert found that plaintiff was moderately limited in the ability to complete a normal workday or week without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, he also found that she had no significant limitations in other areas of concentration. Those areas included carrying out short and simple instructions, maintaining concentration for "extended periods," performing activities within a schedule, maintaining regular attendance, being punctual, sustaining an ordinary routine without special supervision, and working in coordination with others without being distracted.

Plaintiff's psychiatric treatment notes, spanning a time period from April 2010 through September 2011 , also indicate that upon mental status examination plaintiff regularly presented with good eye contact, normal memory, no conceptual disorganization,

linear and goal-directed thought processes, a cooperative and interested attitude, and good attention and concentration.

The ALJ's RFC assessment is substantially supported by Dr. Baskin's consulting examination, Dr. Alpert's findings, and plaintiff's record of treatment. Although the ALJ found that plaintiff could perform work "on a sustained basis," he found that this work would have to be simple, repetitive work, with no more than occasional contact with other people. This RFC finding adequately incorporated plaintiff's moderate nonexertional limitations. See, e.g., Kotasek v. Comm'r of Soc. Sec., 2009 WL 1584658, *13 (June 3, 2009) (ALJ's RFC finding, which limited contact with other individuals, was supported by substantial evidence where medical opinions indicated that plaintiff had stress stemming from social phobias).

**B.    Failure to Call Vocational Expert**

The ALJ relied on the grids in determining plaintiff's ability to perform work considering her RFC, age, education, and past work experience. Plaintiff contends that the ALJ committed reversible error in failing to call a VE in order to ascertain plaintiff's ability to do work considering her nonexertional limitations.

Where a claimant's nonexertional impairments significantly diminish her ability to work beyond any incapacity caused solely from exertional limitations, and she is unable to perform the full range of employment under the grids, a VE must be consulted. See

Bapp v. Bowen, 802 F.3d 601, 603 (2d Cir. 1986). However, "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Id. at 602. To establish that reference to the grids is inadequate and that the use of a vocational expert is mandatory, nonexertional impairments must "so narrow[] a claimant's possible range of work as to deprive [her] of a meaningful employment opportunity." Id.

Plaintiff has not established that her nonexertional impairments had such a restrictive effect on her employment prospects. As noted above, the evidence, both from plaintiff's psychiatric treatment records and from consulting sources, established that, at most, plaintiff had moderate limitations in social functioning and in maintaining concentration, persistence, or pace. Dr. Alpert actually found that plaintiff had no significant limitation in maintaining concentration for "extended periods" and in maintaining a regular schedule, and plaintiff's treatment notes consistently reported good attention and concentration, good eye contact, and cooperative and interested attitude.

The ALJ properly found that plaintiff's nonexertional limitations had "little or no effect on the occupational base of unskilled work at all exertional levels." T. 26. The ALJ then applied guideline 204.00 as a framework for determining that

plaintiff was not disabled. This analysis reflected application of the proper legal rules. See <u>Medley v. Colvin</u>, 2015 WL 4112477, at *5 (W.D.N.Y. July 8, 2015) ("[S]ince Plaintiff's non-exertional limitations did not significantly erode her occupational base for work at all exertional levels, the ALJ properly applied Grid Rule 204.00 as a framework for determining that Plaintiff was not disabled within the meaning of the Act."). The ALJ's decision to rely on the grids was thus supported by substantial evidence in the record, and VE testimony was not necessary in this case.

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 9) is denied and the Commissioner's cross-motion (Doc. 14) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**SO ORDERED.**

**S/Michael A. Telesca**

HON. MICHAEL A. TELESCA
United States District Judge

Dated:    August 25, 2015
          Rochester, New York.